[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-12717

_____

D.C. Docket No. 9:06-cr-80115-KAM-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ORAL ROGER RUSSELL,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 15, 2021)

Before JORDAN, JILL PRYOR and BRANCH, Circuit Judges.

JILL PRYOR, Circuit Judge:

Oral Russell, a federal prisoner, sent the district court a short letter asking the court to appoint counsel to assist him in filing a motion for a sentence reduction under the First Step Act of 2018. The district court construed Russell's *pro se* letter as a motion for a sentence reduction and, without giving Russell any opportunity to be heard, denied the motion. Russell, still proceeding *pro se*, then filed a motion for reconsideration, arguing that he was eligible for a sentence reduction and the court should award him one. The district court denied that motion as well. Russell, now represented by counsel, appeals the district court's orders. After careful review and with the benefit of oral argument, we vacate and remand for further proceedings in the district court.

## I.

A federal grand jury charged Russell with possessing with intent to distribute 50 grams or more of crack cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A). Before trial, the government gave notice that it intended to seek an enhanced punishment because Russell previously had been convicted of a felony drug offense. As a result, Russell faced a penalty range of 20 years to life. *See* 21 U.S.C. § 841(b)(1)(A) (2007).

After the government gave notice, Russell pled guilty. In the plea agreement, Russell admitted that he was guilty of "knowing possession with intent

to distribute at least 50 grams of cocaine base." Doc. 27 at 1.[1] The parties attached to the plea agreement a "Factual Basis," which they agreed was a "true and accurate description of the relevant offense conduct" and "constitute[d] the defendant's relevant conduct under Section 1B1.3 of the Sentencing Guidelines." *Id.* According to the Factual Basis, if the case had gone to trial, the government would have been able to prove beyond a reasonable doubt that law enforcement officers seized a total of 441.2 grams of crack cocaine from Russell.

After the court accepted Russell's guilty plea, a probation officer prepared a presentence investigation report ("PSR"). The PSR recounted that the offense involved 441.2 grams of crack cocaine. The PSR found that Russell qualified as a career offender under the Sentencing Guidelines. *See* U.S.S.G. § 4B1.1. After applying the career-offender enhancement, the PSR calculated his guidelines range as 262 to 327 months' imprisonment. The district court sentenced him to 262 months' imprisonment.[2] Russell did not appeal his sentence.

A few years after Russell was sentenced, Congress passed the Fair Sentencing Act of 2010 to address disparities in sentences between offenses involving crack cocaine and those involving powder cocaine. *See* Pub. L. No. 111-220, 124 Stat. 2372 (2010); *see also Kimbrough v. United States*, 552 U.S. 85, 97–

---

[1] "Doc." numbers refer to the district court's docket entries.

[2] The transcript from the sentencing hearing was never filed with the district court and is not in the record before us.

100 (2007) (providing background on disparity).  The Fair Sentencing Act increased the quantity of crack cocaine necessary to trigger the highest statutory penalties from 50 grams to 280 grams and the quantity of crack cocaine necessary to trigger intermediate statutory penalties from 5 grams to 28 grams.  *See* Fair Sentencing Act § 2; 21 U.S.C § 841(b)(1)(A)(iii), (B)(iii).  Until recently, the Fair Sentencing Act's reduced penalties applied only to defendants who were sentenced on or after the Fair Sentencing Act's effective date.  *Dorsey v. United States*, 567 U.S. 260, 264 (2012).

In 2018, Congress passed the First Step Act, Pub. L. No. 115-391 § 404, 132 Stat. 5194, 5222 (2018), to give district courts the discretion "to apply retroactively the reduced statutory penalties for crack-cocaine offenses in the Fair Sentencing Act of 2010 to movants sentenced before those penalties became effective."  *United States v. Jones*, 962 F.3d 1290, 1293 (11th Cir. 2020).  Section 404 of the First Step Act authorizes a district court "that imposed a sentence for a covered offense" to reduce a defendant's sentence.  First Step Act § 404(b).  A "covered offense" refers to a "violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010."  *Id.* § 404(a).  The First Step Act permits a district court to "impose a reduced sentence as if" the Fair Sentencing Act had been "in effect at the time the covered offense was committed."  *Id.* § 404(b).  The First Step Act leaves to the

4

district court's discretion whether to reduce a sentence for an eligible defendant, stating that "[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section." *Id.* § 404(c).

After the First Step Act went into effect, Russell sent the district court a one-page letter, asking the court to appoint counsel to assist him in filing a motion for a sentence reduction under the First Step Act. Nothing in Russell's short letter addressed the merits of whether he was eligible for, or should be awarded, a sentence reduction. The district court nonetheless construed Russell's letter as a motion requesting a sentence reduction under the First Step Act and directed the government to file a response.

The government opposed any reduction to Russell's sentence. If the Fair Sentencing Act had been in effect at the time of Russell's sentencing, the government argued, it would have had "no impact" on Russell's sentence because the maximum penalty for an offense involving 441.2 grams of crack cocaine remained the same under the Fair Sentencing Act. Doc. 63 at 2. The government limited its response to arguing that Russell was ineligible for relief. It did not address whether, if Russell were eligible for relief, the court should exercise its discretion to reduce Russell's sentence.[3]

---

[3] The district court also directed the probation office to file a memorandum with the court regarding the motion for a reduction of sentence. Although the probation office apparently

In a two-paragraph order, the district court denied Russell a sentence reduction. The court stated that Russell was "not eligible" for a sentence reduction because his offense involved 452.2 grams of crack cocaine,[4] an offense involving this drug quantity remained subject to the same penalty range after the Fair Sentencing Act, and there was no change to his advisory guidelines range. Doc. 64 at 1. In addition, the district court said, even if Russell were eligible for a sentence reduction under the First Step Act, after "considering the statutory factors set forth in 18 U.S.C. § 3553(a)," the court would not exercise its discretion to grant a sentence reduction.[5] *Id.*

Russell, still proceeding *pro se*, filed a motion for reconsideration. This motion was his first opportunity to address his eligibility for a sentence reduction. He argued that he was eligible because he had been charged with, and pled guilty

prepared a response, the response was never entered on the docket and thus is not part of the record.

[4] It appears that the district court intended to refer to the drug quantity that was admitted in the plea agreement and set forth in the PSR—441.2 grams of crack cocaine.

[5] Section § 3553(a) states that a court should "impose a sentence sufficient, but not greater than necessary" to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training. 18 U.S.C. § 3553(a)(2). In imposing a sentence, a court also should consider: the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the sentencing range established under the Sentencing Guidelines, any pertinent policy statement issued by the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims. *Id*. § 3553(a)(1), (3)–(7).

to, an offense involving 50 grams or more of crack cocaine, an offense for which the Fair Sentencing Act changed the penalty range.

In addition, Russell urged the district court to exercise its discretion to award a sentence reduction, saying that he had been rehabilitated while incarcerated. He submitted records showing that during his 13 years of incarceration he had no disciplinary infractions, participated in a program to assist inmates with special needs, completed over 1,200 hours of GED coursework, and worked as a barber. Prison officials described Russell as a "good role model to other inmates" who was "responsible, reliable, and trustworthy." Doc. 65 at 21.

The district court, in another short order, denied Russell's motion for reconsideration. The court observed that Russell had admitted in his factual proffer that his offense involved 441.2 grams of crack cocaine. Given this drug quantity, the court said, if Russell were indicted today, the government would have alleged in the indictment that the offense involved an amount of crack cocaine sufficient to trigger the same statutory penalty. The court did "not believe that Congress intended to give Defendant and others similarly situated to get [sic] the benefit of a sentence reduction." Doc. 66 at 1.

After the district court denied the motion for reconsideration, an attorney with the Federal Public Defender filed a motion for appointment of counsel, seeking to represent Russell on appeal. The attorney explained that Russell's

eligibility for relief under the First Step Act raised a question of first impression that had broad application and pointed out that Russell previously had requested the assistance of counsel in seeking relief under the First Step Act. The district court granted the motion, and Russell is represented by counsel on appeal.

## II.

We review *de novo* whether a district court had the authority to modify a term of imprisonment. *Jones*, 962 F.3d at 1296. We review a district court's denial of an eligible movant's request for a reduced sentence under the First Step Act for an abuse of discretion. *Id.*; *United States v. Harris*, 989 F.3d 908, 911–12 (11th Cir. 2021). Although our review of a district court's decision whether to exercise its discretion is deferential, it "is not simply a rubber stamp." *United States v. Johnson*, 877 F.3d 993, 997 (11th Cir. 2017) (internal quotation marks omitted).

## III.

The question before us is whether the district court abused its discretion when, after construing Russell's letter requesting counsel as a motion for a sentence reduction, it refused to grant him a sentence reduction and then denied his motion for reconsideration. A district court generally lacks the authority to "modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Section 3582(c) describes narrow circumstances when a district court may modify

8

a sentence, including when the modification is "expressly permitted by statute."

*Id*. § 3582(c)(1)(B).  The First Step Act expressly permits a district court to reduce

a sentence imposed for a covered offense under the Act.  *See* First Step Act § 404.[6]

In *Jones* we announced the framework for reviewing a district court's denial

of a sentence reduction under § 404 of the First Step Act.  Applying this

framework here, we conclude that we must vacate and remand for further

proceedings because Russell is eligible for a sentence reduction under the First

Step Act, and we cannot tell whether the district court understood that it had the

authority to reduce his sentence.

### A.

In *Jones*, we considered the appeals of four federal prisoners whose motions

for a reduction of sentence under § 404 had been denied in the district courts.  *See*

962 F.3d at 1293.  We explained that "[w]hen Congress enacted the First Step Act

of 2018, it granted district courts discretion to reduce the sentences of crack-

cocaine offenders in accordance with the amended penalties in the Fair Sentencing

Act."  *Id.* at 1297.

To be eligible for a reduction under § 404(b), a movant's offense of

conviction must have been a "covered offense," meaning a crack-cocaine offense

---

[6] We express no view on whether § 404 of the First Step Act is self-executing—meaning it operates on its own to permit a district court to reduce a movant's sentence—or instead operates through § 3582(c)(1)(B).

that triggered the enhanced statutory penalties set forth in § 841(b)(1)(A)(iii) or (B)(iii). *Id.* at 1301. To determine whether the offense of conviction is a covered offense, a district court should consult the record, including the movant's charging document, the jury verdict or guilty plea, the sentencing record, and the final judgment. *Id.* at 1300–01.

The government argued in *Jones* that to decide whether a defendant committed a "covered offense," a district court should consider the actual quantity of crack cocaine involved in the movant's violation based on a finding of drug quantity anywhere in the record, "such as a finding that was necessary for determining only relevant conduct under the Sentencing Guidelines." *Id.* at 1301. We rejected this argument as inconsistent with the statutory text. *Id.* Rather, we explained, a district court should consider only whether the quantity of crack cocaine satisfied the specific drug quantity elements in § 841—in other words, whether his offense involved 50 grams or more of crack cocaine, triggering § 841(b)(1)(A)(iii), or between 5 and 50 grams, triggering § 841(b)(1)(B)(iii). *Id.* We concluded that all four movants in *Jones* had covered offenses because they were sentenced for offenses with penalties that were modified by the Fair Sentencing Act. *Id.* at 1302–03.

Next, we explained that even if a movant was sentenced for a covered offense, he was not necessarily eligible for a sentence reduction. *Id.* at 1303.

Section 404(b) imposed the further requirement, that any reduction must be "*as if* sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the covered offense was committed." *Id.* (emphasis added) (quoting First Step Act § 404(b)). Given this language, a district court cannot reduce a movant's sentence if the sentence is already equal to the lowest statutory penalty that would have been available to him under the Fair Sentencing Act. *Id.* In determining what a movant's statutory penalty would have been if the Fair Sentencing Act had been in effect when he committed his offense, we said, a district court is bound by a previous drug-quantity finding when it could have been used to determine his statutory penalty at the time of sentencing.[7] *Id.* When a movant's sentence is already equal to the Fair Sentencing Act's mandatory-minimum sentence, then his sentence necessarily would have been the same had the Fair Sentencing Act been in effect when he was sentenced. Thus, the First Step Act does not authorize the district court to reduce his sentence. *Id.*

---

[7] Applying this standard, whether a court can look at a drug-quantity finding made at sentencing to determine what a movant's statutory penalty range would have been under the Fair Sentencing Act generally depends on whether the movant was sentenced before or after the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). In *Apprendi*, the Supreme Court held that a drug-quantity finding that increases a defendant's punishment must be made by a jury based on a beyond-a-reasonable-doubt standard of proof. *Id.* at 490. Under *Jones*, if a movant was sentenced before the Supreme Court's decision in *Apprendi*, the court generally can look to a drug-quantity finding made by the sentencing judge because that determination was used to set the movant's statutory penalty range. *See Jones*, 962 F.3d at 1302. But if a movant was sentenced after *Apprendi*, the court generally cannot look to a drug quantity-finding made at sentencing because that determination was made solely for the purpose of identifying the movant's relevant conduct under the Sentencing Guidelines, not for setting his statutory penalty range. *Id.* at 1301–02.

But even when a district court has "authority to reduce" a movant's sentence, it is "not required to do so." *Id.* at 1304. A district court has "wide latitude to determine whether and how to exercise [its] discretion in this context" and may "consider all the relevant factors, including the statutory sentencing factors" set forth in 18 U.S.C. § 3553(a). *Id.* In a deciding whether to grant a sentence reduction, a court also may consider "previous findings of relevant conduct," including a drug-quantity finding made at the defendant's sentencing. *Id.* at 1301.

Applying this framework in *Jones*, we vacated and remanded the district courts' denials of two of the movants' motions. For these movants, the district courts had the authority to reduce their sentences under the First Step Act because they were eligible for relief, but it was unclear whether the courts had recognized that authority. *Id.* at 1304–05. Because it was ambiguous whether the district courts had denied the movants' motions on the erroneous ground that they were ineligible for relief, we vacated and remanded for further consideration. *Id.* at 1305.

**B.**

We now apply the *Jones* framework to review the district court's orders denying Russell a sentence reduction. We conclude that the district court had the authority to reduce Russell's sentence because he had a conviction for a covered

offense under the First Step Act.  But the record is ambiguous as to whether the district court understood that it had the authority to reduce Russell's sentence, so we must vacate the district court's orders and remand for further proceedings.

**1.**

Under *Jones*, we begin our analysis by asking whether Russell—who pled guilty to possessing with intent to distribute 50 grams or more of crack cocaine—is eligible for relief under the First Step Act.  In its brief on appeal, the government initially argued that Russell is ineligible for relief.  But after our decision in *Jones*, the government conceded Russell's eligibility for a sentence reduction under the First Step Act.

Applying the two-part framework from *Jones*, we likewise conclude that Russell is eligible.  First, *Jones* makes clear that Russell's offense—possessing with intent to distribute 50 grams or more of crack cocaine—qualifies as a covered offense.  *See Jones*, 962 F.3d at 1303.  Second, the record reflects that Russell has not already been sentenced "as if" the Fair Sentencing Act had been in effect because he did not receive the lowest statutory penalty available under the Fair Sentencing Act for his offense.[8]  *See id.* (internal quotation marks omitted).

---

[8] The parties disagree about what the lowest statutory penalty would have been if Russell had been sentenced under the Fair Sentencing Act.  Russell says that we should look to the statutory minimum penalty for an offense involving 50 grams of crack cocaine, using the drug quantity element of the offense to which he pled guilty.  With this drug quantity and considering Russell's prior conviction for a felony drug offense, the minimum statutory penalty available

**2.**

Although the "district court had the authority to reduce" Russell's sentence under the First Step Act, "it was not required to do so." *Jones*, 962 F.3d at 1304. The district court had "wide latitude" in deciding whether to exercise its discretion to reduce Russell's sentence and could consider a variety of factors, including the statutory sentencing factors set forth in 18 U.S.C. § 3553(a). *Id.*; *see Harris*, 989 F.3d at 912.

The next step of our inquiry is to ask whether the district court abused its discretion when it refused to grant Russell a sentence reduction. *See Jones*, 962 F.3d at 1304. Although our review of a district court's decision whether to exercise its discretion is deferential, it "is not simply a rubber stamp." *Johnson*, 877 F.3d at 997 (internal quotation marks omitted). "A court must explain its sentencing decisions adequately enough to allow for meaningful appellate review. Else, it abuses it[s] discretion." *Id.* (citing *Gall v. United States*, 552 U.S. 38, 50–51 (2007)). "This principle applies not only when a court imposes a sentence, but

---

under the Fair Sentencing Act would have been 10 years' imprisonment. *See* 21 U.S.C. § 841(b)(1)(B) (2011). The government says that we should look to the statutory penalty for an offense involving 441.2 grams of crack cocaine—the drug quantity Russell admitted in the factual proffer that was part of his plea agreement. With this drug quantity and Russell's prior conviction for a felony drug offense, the minimum statutory penalty available under the Fair Sentencing Act would have been 20 years' imprisonment. *See* 21 U.S.C. § 841(b)(1)(A) (2011).

But, as the parties concede, we need not resolve whether to use 50 grams or 441.2 grams as the relevant drug quantity for purposes of determining whether Russell is eligible relief. Under either approach, Russell is eligible for relief because his current sentence—262 months—is longer than the minimum statutory penalty.

also when it determines whether or not to reduce a defendant's sentence" pursuant to provisions like § 3582(c). *Id.* And as we noted above, when reviewing a district court decision denying a sentence reduction, we must vacate and remand if the record is ambiguous as to whether the court understood it had the authority to reduce the movant's sentence. *Jones*, 962 F.3d at 1304–05.

In this case, we must vacate and remand because the record is ambiguous as to whether the district court understood its authority to reduce Russell's sentence. From the district court's last order, the order denying Russell's motion for reconsideration, we cannot discern whether the district court denied a sentence reduction based on a determination that Russell was ineligible for a sentence reduction under the First Step Act or on a choice not to exercise its discretion despite his eligibility. In that order, the district court explained that Russell had admitted his offense involved 441.2 grams of crack cocaine, which meant that he would have faced the same statutory penalties even if he had been indicted after the Fair Sentencing Act went into effect. The court then stated that Congress did not "intend[] to give Defendant and others similarly situated . . . the benefit of a sentence reduction." Doc. 66 at 1.

On the one hand, this language suggests the district court believed Russell was ineligible for a sentence reduction under the First Step Act. It could be read as saying Russell was ineligible because the First Step Act had not changed the

penalty range for an offense involving 441.2 grams of crack cocaine. If this is what the court meant, it was error because, as our decision in *Jones* made clear, Russell was eligible for relief because he was convicted of a covered offense— violating 18 U.S.C. § 841(b)(1)(A)—and did not receive the lowest statutory penalty available under the Fair Sentencing Act for this offense. *See Jones*, 862 F.3d at 1303–04.

On the other hand, the order could be read as indicating that the district court understood Russell was eligible for relief but declined to exercise its discretion because the court wished to avoid unwarranted sentencing disparities between similarly-situated defendants. If this is what the district court intended, we would be obliged to conduct a different inquiry to determine whether the district court abused its discretion. Because we cannot resolve this ambiguity, we must vacate and remand to the district court. *See id.* at 1305.

The government argues remand is not required because we can look back to the district court's initial order to conclude that upon remand the court would decline to exercise its discretion. In effect, the government says remand is unnecessary because any error in the district court's order on the motion for reconsideration was harmless. We assume that remand would not be required if it were futile because we could discern from the record that the district court would decline to exercise its discretion to award a sentence reduction. *See United States*

16

*v. Hersh*, 297 F.3d 1233, 1250–54 (11th Cir. 2002) (explaining that remand was not required when district court erred in calculating defendant's guidelines range because any error was harmless given district court's explanation that it would impose the same sentence under the alternative guidelines calculation and the court's decision was reasonable).  But we are not persuaded that we can rely on the initial order to say that remand would be futile here because the order is inadequate to allow meaningful appellate review of the district court's decision not to exercise its discretion.

When a district court determines whether or not to exercise its discretion to reduce a defendant's sentence, it must provide enough explanation to permit our meaningful review.  *See Johnson*, 877 F.3d at 997.  Although detailed findings or explanations are not required, a district court must "set forth enough to satisfy [an] appellate court" that the district court "considered the parties' arguments and ha[d] a reasoned basis" for denying the reduction.  *Chavez-Mesa v. United States*, 138 S. Ct. 1959, 1966 (2018) (internal quotation marks omitted); *see Johnson*, 877 F.3d at 997 (explaining "there must be enough, in the record or the court's order, to allow for meaningful appellate review of its decision" declining to exercise its discretion).

There is not enough here to permit meaningful appellate review of the district court's initial order.  The court simply said, "[e]ven assuming Defendant is

17

eligible for resentencing under the First Step Act of 2018, after considering the statutory factors set forth in 18 U.S.C. § 3553(a), the Court would exercise its discretion to deny Defendant a reduction in this sentence." Doc. 64 at 1–2. And we cannot discern from the record the basis for the district court's decision not to exercise its discretion. When the district court issued this order, the court had before it nothing from the parties addressing whether the court should exercise its discretion. Russell had merely sent the court a one-page letter requesting appointed counsel to assist him in seeking a sentence reduction under the First Step Act when the court *sua sponte* converted his request into a motion for a sentence reduction.[9] The government submitted a response to the construed motion

---

[9] Regarding the district court's decision to recharacterize Russell's letter as a motion for a sentence reduction, we recognize that a district court has an obligation to "look beyond the label of a *pro se* inmate's motion to determine if it is cognizable under a different statutory framework" and, if so, recharacterize the motion based on the substance of the filing and the relief sought. *United States v. Stossel*, 348 F.3d 1320, 1322 n.2 (11th Cir. 2003). A district court may recharacterize a *pro se* litigant's motion to "create a better correspondence between the substance of a *pro se* motion's claim and its underlying legal basis." *Castro v. United States*, 540 U.S. 375, 381–82 (2003); *see also id.* at 386 (Scalia, J., concurring) (stating that a district court's recharacterization of a *pro se* complaint "should certainly not occur in any situation where there is a risk that the patronized litigant will be harmed rather than assisted by the court's intervention").

We have serious concerns about the district court's decision to recharacterize Russell's letter as a motion for a sentence reduction. Because Russell neither requested a sentence reduction in his letter nor advanced any argument about why he should receive a sentence reduction, correspondence between the letter and the district court's treatment of it as a motion for a sentence reduction is lacking. *See Castro*, 540 U.S. at 382 (majority opinion).

Our concurring colleague would vacate and remand on the ground that "[t]he district court's recharacterization decision harmed Russell" because the court recharacterized Russell's letter as a substantive motion for a sentence reduction without offering him the opportunity to withdraw the motion or amend it to "provide substance for the arguments underlying the

18

opposing any sentence reduction, but it addressed only Russell's eligibility for relief under the First Step Act, not whether, if Russell were eligible, the court should exercise its discretion. So even assuming it would be appropriate to look back to the initial order after the court's ruling on the motion for reconsideration, we cannot affirm based on the order because neither the order itself nor the record sheds any light on the district court's reasons for declining to exercise its discretion.[10]

## IV.

For the reasons set forth above, we vacate the district court's orders denying Russell a sentence reduction and remand for further proceedings.

**VACATED AND REMANDED.**

---

recharacterized motion." Concurring Op. at 22. But we need not decide today whether the district court's orders should be vacated because the district court purported to rule on a motion for a sentence reduction from Russell without giving him an opportunity to be heard. Instead, we vacate and remand because the district court's orders are inadequate to allow for meaningful appellate review.

[10] This conclusion is based on the record before us. We express no opinion about whether we would reach the same result if, when the court denied the initial motion for a sentence reduction, it had before it any argument from the parties about whether it should exercise its decision. *See United States v. Eggersdorf,* 126 F.3d 1318, 1322–23 (11th Cir. 1997) (affirming district court's denial of motion for sentence reduction where government argued that the court should not award a reduction due to the scope of the defendant's criminal conduct and criminal history—in effect arguing based on the § 3553(a) factors—and the court cited the government's opposition in denying the motion).

BRANCH, Circuit Judge, concurring in the judgment:

I concur in the judgment because the district court erred and because we should vacate the orders on appeal and remand for further proceedings. I disagree, however, with the majority's analysis of the district court's recharacterization error and so I write separately.

As a reminder, Russell initially sent the district court a short letter requesting the court to appoint counsel to represent him in requesting a sentence reduction under the First Step Act. Without warning Russell of the consequences of recharacterization, receiving any argument from Russell concerning the merits of a sentence reduction, or giving Russell the opportunity to amend or withdraw the motion, the district court construed Russell's letter as a motion requesting a sentence reduction and ordered the government to respond. The government argued in response that Russell was ineligible for a sentence reduction under the First Step Act. The district court then denied the recharacterized motion for a sentence reduction, finding that (1) Russell was ineligible for a sentence reduction under the First Step Act, and (2) that even if Russell was eligible for a reduction, "after considering the statutory factors set forth in 18 U.S.C. § 3553(a), the Court would exercise its discretion to deny Defendant a reduction in his sentence."[1]

_____

[1] After the district court denied Russell's recharacterized motion for a sentence reduction, Russell filed a motion for reconsideration and presented arguments for the first time as

20

While I agree, under the majority's approach, that the district court's first conclusion—that Russell was ineligible for a sentence reduction—was clearly wrong under *United States v. Jones*, 962 F.3d 1290 (11th Cir. 2020), I would not reach the eligibility determination under *Jones* because I believe the district court erred as a matter of law in recharacterizing Russell's letter without any notification or warning to Russell. Based on that initial error, I would remand this case for the district court to reconsider Russell's letter requesting counsel.[2]

District courts have discretion to recharacterize a *pro se* litigant's motion to "create a better correspondence between the substance of a *pro se* motion's claim and its underlying legal basis." *Castro v. United States*, 540 U.S. 375, 381–82 (2003).[3] But recharacterization "should certainly not occur in any situation where there is a risk that the patronized litigant will be harmed rather than assisted by the court's intervention." *Castro*, 540 U.S. at 386 (Scalia, J., concurring).

The district court's recharacterization of Russell's motion created two problems.

---

to why he was eligible for—and deserved—a sentence reduction. The district court also denied that motion, again finding Russell ineligible for a sentence reduction.

[2] Although the majority has serious concerns about the district court's recharacterization decision, it would not decide the case on this basis.

[3] District courts can also recharacterize a *pro se* litigant's motion to "avoid an unnecessary dismissal" or "avoid inappropriately stringent application of formal labeling requirements." *Castro*, 540 U.S. at 381.

First, the recharacterization did not "create a better correspondence between the substance" of Russell's claim and "its underlying legal basis," which is what our precedent allows, and in some cases requires, district courts to do. *Castro*, 540 U.S. at 381–82; *United States v. Stossel*, 348 F.3d 1320, 1322 n.2 (11th Cir. 2003) ("Federal courts are obligated to look beyond the label of a *pro se* inmate's motion to determine if it is cognizable under a different statutory framework."). In reviewing Russell's letter requesting counsel, I am not convinced it "corresponded" to the underlying legal basis of a motion for a sentence reduction under the First Step Act. The letter looks nothing like a motion requesting a sentence reduction under the First Step Act. For example, the letter makes no arguments as to why the district court should use its discretion to reduce Russell's sentence. Rather, the letter explains that Russell seeks counsel to help prepare such a motion because the First Step Act made the Fair Sentencing Act retroactive to prisoners like him.

Which brings me to the second—and more critical—problem caused by the district court. The district court's recharacterization decision harmed Russell because it deprived Russell of his opportunity to either withdraw his motion or provide substance for the arguments underlying the recharacterized motion. This harm is significant because successive requests for a sentence reduction under the First Step Act are generally not allowed, and, therefore, a defendant has only one

opportunity to address why he should receive such a reduction. *See* Pub. L. No. 115-391 § 404(c), 132 Stat. 5194, 5222 (2018) ("No court shall entertain a motion made under this section to reduce a sentence . . . if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits."). Accordingly, by depriving Russell of his opportunity to withdraw his motion or provide arguments in support of the recharacterized motion, the district court effectively denied Russell his one and only opportunity to request a reduction.

Because of the consequences inherent in filing an initial motion to vacate a sentence under 28 U.S.C. § 2255, the Supreme Court held in *Castro* that a litigant would be relieved from the consequences of filing a first § 2255 motion if the district court recharacterized a *pro se* motion requesting other relief as a § 2255 motion without "inform[ing] the litigant of its intent to recharacterize, warn[ing] the litigant that the recharacterization will subject subsequent § 2255 motions to the law's 'second or successive' restrictions, and provid[ing] the litigant with an opportunity to withdraw, or to amend, the filing." *Id.* at 377, 383.

Because First Step Act motions for a sentence reduction carry similar consequences to first § 2255 motions, the Court's reasoning in *Castro* translates to recharacterization decisions in the First Step Act context. While a movant is not entitled to an opportunity to be heard before the district court denies his First Step

23

Act motion, he should be given notice and warned of the consequences of the recharacterization of his filing as a First Step Act motion because of the potential prejudice that flows from that recharacterization. Russell was harmed, rather than assisted, by the recharacterization, because he was not warned of the consequences of filing a First Step Act motion or given the decision to withdraw or amend his motion before the district court ruled on it.[4]

---

[4] While Russell eventually made substantive arguments for a sentence reduction in his motion for reconsideration, that opportunity did not cure the district court's initial error of recharacterizing his letter requesting counsel as a motion for a sentence reduction because the recharacterization carried collateral consequences, Russell was not notified of the court's intent to recharacterize or warned of the consequences of recharacterization, and he was not given an opportunity to withdraw or otherwise amend his motion. This harm is exacerbated because the court completely ignored Russell's request for counsel. If Russell had been warned of the recharacterization and its consequences, he could have withdrawn his motion, sought counsel, and eventually sought a sentence reduction with the benefit of counsel.

Russell was further harmed by the recharacterization decision because he was left to make his substantive arguments only in a motion for reconsideration, and the grounds for granting a motion for reconsideration are limited. Specifically, "a motion for reconsideration of a district court order in a criminal action is not expressly authorized by the Federal Rules of Criminal Procedure . . . ." *United States v. Vicaria*, 963 F.2d 1412, 1213 (11th Cir. 1992). "Although no statute or rule expressly provides for the filing of a motion for reconsideration in criminal cases, federal district courts necessarily have substantial discretion in ruling on motions for reconsideration." *See United States v. Razz*, 387 F. Supp. 3d 1397, 1402 (S.D. Fla. 2019) (collecting cases). In using their discretion, district courts, including the Southern District of Florida, "generally employ the standards underlying motions for reconsideration in civil cases." *Id.* (collecting cases). In civil cases, movants for reconsideration may only obtain relief in certain specific circumstances and must show "'extraordinary circumstances' justifying the reopening of a final judgment." *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005); *M.G. v. St. Lucie Cnty. Sch. Bd.*, 741 F.3d 1260, 1262 (11th Cir. 2014). For example, reconsideration is justified in civil cases when there is "(1) an intervening change in controlling law; (2) the availability of new evidence; [or] (3) the need to correct clear error or prevent manifest injustice." *Razz*, 387 F. Supp. 3d at 1402 (quoting *Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1369 (S.D. Fla. 2002)).

While the district court's order denying Russell's motion for reconsideration does not specifically address whether it held Russell to this heightened standard on reconsideration, the existence of a heightened standard demonstrates that even though Russell was permitted to make

For these reasons, I would hold that the district court abused its discretion in recharacterizing Russell's letter requesting counsel as a motion for a sentence reduction. Consequently, I concur in the majority's holding vacating and remanding both of the district court's orders in this case. Unlike the majority, however, I would remand this case for the district court to consider Russell's letter requesting counsel. Russell then could choose to file a motion under the First Step Act requesting a sentence reduction.

---

his merits arguments for the first time in his motion for reconsideration, he still suffered prejudice because of the improper recharacterization.

25