[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-14707

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JOSE MANUEL SALDANA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:95-cr-00605-PAS-2

_____

Before JILL PRYOR, BRANCH, and ANDERSON, Circuit Judges.

PER CURIAM:

Jose Saldana, a counseled federal prisoner, appeals following the district court's denial of his motions for a sentence reduction under the First Step Act of 2018, Pub. L. No. 115-391, § 404, 132 Stat. 5194 (Dec. 21, 2018) ("First Step Act"). In 1996, Saldana was convicted of one count of conspiring to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) ("Count 1"); and two counts of possession with intent to distribute cocaine, under § 841(a)(1) ("Counts 4 and 8"). However, although the superseding indictment alleged that Saldana and his codefendants were members of an organization distributing crack cocaine, and certain counts charged him with possessing a "detectable amount of cocaine," none of the counts charged him with responsibility for any specific amount of crack cocaine; the jury verdict also did not contain any such finding.

The district court sentenced Saldana to life imprisonment as to Counts 1, 4, and 8, followed by 5 years' imprisonment as to each of three other counts of conviction, set to run consecutively to each other and all other counts, for a total of life plus 15 years' imprisonment, followed by 10 years of supervised release. Importantly, his total sentence was based, in part, on the district court's finding that he was responsible for at least 1.5 kilograms of crack cocaine. He appealed, but we affirmed his convictions and total sentence.

*See United States v. Velez*, 234 F.3d 709 (11th Cir. 2000) (unpublished; table).

In the instant appeal, Saldana and the government agree that the district court erred in concluding that it was bound to its sentencing finding that he was responsible for at least 1.5 kilograms of crack cocaine. They assert that, because there was no jury finding to that effect, and because the Supreme Court issued its decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), while his direct appeal was pending, the district court erred in finding that he was ineligible for a sentence reduction based on the quantity of drugs necessary to the jury verdict.

We review *de novo* whether a district court had the authority to modify a term of imprisonment. *United States v. Jones*, 962 F.3d 1290, 1296 (11th Cir. 2020), *cert. denied*, 141 S. Ct. 2635 (2021).

In 2010, the Fair Sentencing Act amended 21 U.S.C. §§ 841(b)(1) and 960(b) to reduce the sentencing disparity between offenses for crack and powder cocaine. *See* Fair Sentencing Act; *see also Dorsey v. United States*, 567 U.S. 260, 268–69 (2012) (detailing the history that led to the enactment of the Fair Sentencing Act, including the Sentencing Commission's criticisms that the disparity between crack-cocaine and powder-cocaine offenses was disproportional and reflected race-based differences). Section 2 of the Fair Sentencing Act changed the quantity of crack cocaine necessary to trigger a 10-year mandatory minimum from 50 grams to 280 grams and the quantity necessary to trigger a 5-year mandatory

minimum from 5 grams to 28 grams. Fair Sentencing Act § 2(a)(1)–(2); *see also* 21 U.S.C. § 841(b)(1)(A)(iii), (B)(iii). These amendments were not made retroactive to defendants who were sentenced before the enactment of the Fair Sentencing Act. *United States v. Berry*, 701 F.3d 374, 377 (11th Cir. 2012). Sections 5 through 8 of the Fair Sentencing Act stated that the United States Sentencing Commission shall promulgate certain amendments to the Sentencing Guidelines. Fair Sentencing Act §§ 5–8. Amendment 750, which retroactively lowered the sentencing range applicable to crack cocaine offenses by revising the crack cocaine quantity tables listed in U.S.S.G. § 2D1.1(c), was promulgated pursuant to § 8 of the Fair Sentencing Act. *See* U.S.S.G. App. C, amend. 750 (2011).

In 2018, Congress enacted the First Step Act, which made retroactive the statutory penalties for covered offenses enacted under the Fair Sentencing Act. *See* First Step Act § 404. Section 401(c) of the First Step Act states that its amendments "shall apply to any offense that was committed before the date of enactment of this Act, if a sentence has not been imposed as of such date of enactment." *Id.* § 401(c). Under § 404(b) of the First Step Act, a court "that imposed a sentence for a covered offense may . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the covered offense was committed." *Id.* § 404(b). The statute defines "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act . . . , that was

committed before August 3, 2010." *Id.* § 404(a). Section 404(c) states that "[n]o court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act." *Id.* § 404(c). The First Step Act further states that "[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section." *Id.*

In *Jones*, we considered the appeals of four federal prisoners whose motions for a reduction of sentence pursuant to § 404(b) were denied in the district courts. *See* 962 F.3d at 1293. First, we held that a movant was convicted of a "covered offense" if he was convicted of a crack-cocaine offense that triggered the penalties in § 841(b)(1)(A)(iii) or (B)(iii). *Id.* at 1301. District courts must consult the record, including the movant's charging document, the jury verdict or guilty plea, the sentencing record, and the final judgment, to determine whether the movant's offense triggered the penalties in § 841(b)(1)(A)(iii) or (B)(iii) and, therefore, was a covered offense. *Id.* at 1300–01. In *Jones*, we rejected the government's argument that, when conducting this inquiry, the district court should consider the actual quantity of crack cocaine involved in the movant's violation. *Id.* at 1301. Rather, the district court should consider only whether the quantity of crack cocaine satisfied the specific drug-quantity elements in § 841—in other words, whether his offense involved 50 grams or more of crack cocaine,

therefore triggering § 841(b)(1)(A)(iii), or between 5 and 50 grams, therefore triggering § 841(b)(1)(B)(iii). *Id.*

Accordingly, any actual quantity of drugs involved in the movant's offense beyond the amount related to his statutory penalty is not relevant to whether he was convicted of a covered offense. *Id.* at 1301–02. However, a court's actual drug-quantity finding remains relevant to the extent that its finding triggered a higher statutory penalty. *Id.* at 1302. Thus, a movant sentenced prior to *Apprendi*, in which the Supreme Court held that facts, such as a drug quantity, that increase a defendant's statutory maximum must be made by a jury, *see Apprendi*, 530 U.S. at 490, cannot "redefine his offense" to one triggering a lower statutory penalty simply because the district court, not a jury, made the drug-quantity finding relevant to his statutory penalty. *See Jones*, 962 F.3d at 1302. Applying this inquiry to the four movants in *Jones*, we concluded that all four were sentenced for covered offenses because they were all sentenced for offenses that had penalties modified by the Fair Sentencing Act. *Id.* at 1302–03.

Next, we explained that a movant's satisfaction of the "covered offense" requirement does not necessarily mean that the district court is authorized to reduce his sentence. *Id.* at 1303. Specifically, the "as if" qualifier in § 404(b) of the First Step Act, which states that any reduction must be "as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the covered offense was committed," imposes two limitations on the district court's authority. *Id.* (quotation marks omitted) (alteration in original); *see*

First Step Act § 404(b). First, the district court cannot reduce a sentence where the movant received the lowest statutory penalty that would also be available to him under the Fair Sentencing Act. *See Jones*, 962 F.3d at 1303. Second, in determining what a movant's statutory penalty would have been under the Fair Sentencing Act, the district court is bound by a previous drug-quantity finding that could have been used to determine the movant's statutory penalty at the time of sentencing. *Id.*

Applying these limitations, we held that, if a movant's sentence necessarily would have remained the same had the Fair Sentencing Act been in effect—in other words, if his sentence were equal to the mandatory minimum imposed by the Fair Sentencing Act for the quantity of crack cocaine that triggered his statutory penalty—then the Fair Sentencing Act would not have benefitted him, and the First Step Act does not authorize the district court to reduce his sentence. *Id.* Under this "as-if" framework, we affirmed the denials of two of the movants' motions but vacated and remanded as to the other two because the district courts had authority to reduce their sentences under the First Step Act, but it was unclear whether the courts had recognized that authority. *Id.* at 1304–05. We held that it was error for the district courts to conclude that a movant was ineligible based on (1) a higher drug-quantity finding that was made for sentencing—not statutory—purposes, (2) a movant's career-offender status, or (3) a movant's sentence being at the bottom of the guideline range. *See id.* at 1305. Because it was ambiguous whether the district courts denied their

motions for one of those reasons, we vacated and remanded the denials for further consideration. *Id.*

Finally, we noted that, although a district court may have the authority to reduce a sentence under § 404 of the First Step Act, it is not required to do so. *Id.* at 1304. It held that a district court has wide latitude to determine whether and how to exercise its discretion and that it may consider the 18 U.S.C. § 3553(a) factors and a previous drug-quantity finding made for the purposes of relevant conduct. *Id.* at 1301, 1304.

As to the drug-quantity finding, we have clarified, applying *Jones*, that "whether a court can look at a drug-quantity finding made at sentencing to determine what a movant's statutory penalty range would have been under the Fair Sentencing Act generally *depends on whether the movant was sentenced before or after the Supreme Court's decision in* [*Apprendi*]." *United States v. Russell*, 994 F.3d 1230, 1237 n.7 (11th Cir. 2021) (emphasis added); *see also United States v. Cotton*, 535 U.S. 625, 629–33 (2002) (reviewing for plain error an *Apprendi* claim where *Apprendi* was decided while the defendant's direct appeal was pending).

We lack binding precedent expressly determining whether a defendant whose appeal was pending when *Apprendi* was decided is entitled to the benefit of its holding. Nevertheless, the Supreme Court has held that a new rule of criminal procedure applies to cases on direct review, even if the defendant's trial has already concluded, with no exceptions for cases in which a new rule constitutes a "clear break" with past precedent. *Edwards v. Vannoy*, 141 S. Ct.

1547, 1554 (2021); *see also Griffith v. Kentucky*, 479 U.S. 314, 328 (1987). And the Government concedes in this appeal that Saldana is entitled to the benefit of *Apprendi* because his direct appeal was pending when *Apprendi* was decided.

Here, because *Apprendi* was issued while Saldana's direct appeal was pending, he is entitled to the benefit of *Apprendi*'s holding, and thus, is eligible for relief under § 404 of the First Step Act. First, there is no dispute that Saldana's convictions on Counts 1, 4, and 8 were covered offenses under the First Step Act because they were crack-cocaine offenses subject to the enhanced penalties under § 841(b)(1)(A)(iii) or (B)(iii). *See Jones*, 962 F.3d at 1301. Second, under *Apprendi*, the district court erred by relying on the 1.5 kilograms of crack cocaine for which it held Saldana responsible at sentencing, because of the lack of any jury finding as to drug quantity. If the Fair Sentencing Act had existed at the time of his sentencing, Saldana could have received a much lower sentence. *See* 21 U.S.C. § 841(b)(1)(C). Thus, because he was sentenced to life imprisonment, and he has not already received the lowest statutory penalty that would be available to him under the Fair Sentencing Act, s*ee Jones*, 962 F.3d at 1303, Saldana is eligible for a sentence reduction under the First Step Act.

In other words, Saldana is entitled to the benefit of *Apprendi*'s holding. Based on the Supreme Court's decisions in *Edwards* and *Griffith*, because his case was on direct appeal when *Apprendi* was decided, he is entitled to the post-*Apprendi* sentencing scheme. *See Edwards*, 141 S. Ct. at 1554; *Griffith*, 479 U.S. at 328.

Specifically, *Apprendi* would have precluded the district court from using the drug-quantity finding made at sentencing because it was not charged in the indictment and proven beyond a reasonable doubt by a jury. *Russell*, 994 F.3d at 1237 n.7. Thus, the district court erred in relying on the 1.5 kilograms of crack cocaine for which it held Saldana responsible at sentencing.

Accordingly, Saldana is eligible for First Step Act relief. Based on the "detectable amount" finding that was charged in the indictment and proven beyond a reasonable doubt, Saldana's statutory penalties for Counts 1, 4, and 8 covered crack cocaine offenses, which were originally calculated pursuant to 21 U.S.C. § 841(b)(1)(A)(iii) or (B)(iii), are now governed by the enhanced zero-to-20-year imprisonment range under 21 U.S.C. § 841(b)(1)(C). 21 U.S.C. § 841(b)(1)(C). Because Saldana's statutory penalty range for his covered offenses would have differed had sections 2 and 3 of the Fair Sentencing Act been in place, the district court had authority to reduce Saldana's sentence under section 404 of the First Step Act. *See Jones*, 962 F.3d at 1300–04. Therefore, the district court erred when it denied Saldana's motion because it incorrectly found that it lacked authority to consider a reduced sentence. *Id.*

Thus, we vacate the district court's order and remand to allow it to exercise its discretion on whether a sentence reduction is warranted under § 404 of the First Step Act.

**VACATED AND REMANDED.**